# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| CATHIE J. COOPER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 04-3476-CV-S-GAF-SSA ) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

## ORDER

Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401, *et seq*. Plaintiff's application was denied initially. On March 26, 2004, following a hearing, an administrative law judge (ALJ) issued a decision finding that plaintiff was not under a "disability" as defined in the Act at any time through the date of the decision. On September 10, 2004, the Appeals Council of the Social Security Administration denied plaintiff's request for review.

The standard of appellate review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *See Johnson v. Chater*, 108 F.3d 178, 179 (8th Cir. 1997). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support the Commissioner's conclusion. *See Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as substantial evidence in the record supports the Commissioner's decision, the court may not reverse it either because substantial evidence exists in the record that would have supported a contrary outcome or because the court

would have decided the case differently. *See Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001). If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence, and one of those positions represents the Commissioner's findings, the court must affirm the decision of the Commissioner. *See Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) (citations omitted).[1]

On appeal, plaintiff argues the ALJ erred by assigning no weight to a residual functional capacity (RFC) checklist completed by her chiropractor, C. Gerald St. John, D.C., and further, by assigning more weight to the opinion of an examining medical doctor, Dr. Corsolini.

On a checklist form chiropractor C. Gerald St. John completed for plaintiff's attorney on May 23, 2003, he suggested limitations precluding all competitive employment, including a limit to standing less than one hour total in the day, sitting no more than two hours total in the day, and sitting and/or standing combined no more than three hours in the day. Dr. St. John's diagnosis was "[a]cute traumatic spinal pelvic subluxation strain sprain - caused by an abrupt deceleration injury to same, with chest pain, vertebrogenic pain; with paravertebral muscle spasms." No objective clinical findings were listed to support the diagnosis or limitations he suggested. On the last page of the form, Dr. St. John made reference to a "high Analog Scale," which he explained meant plaintiff was "probably one of about 2% who never totally regain the health status prior to the injury." He also suggested she would require continued chiropractic "adjustments" indefinitely.

---

[1] Upon review of the record and applicable authority herein, the defendant's position is found to be controlling. Much of defendant's brief is adopted without quotation noted.

The opinion of a chiropractor is generally entitled to less weight than that of a medical doctor, because a chiropractor is not an "acceptable medical source" under the regulations. *See Ingram v. Chater*, 107 F.3d 598 (8th Cir. 1997) (citing 20 C.F.R. § 404.1513(a)) (the court declined to rely on chiropractor's conclusions because "[u]nder the regulations, chiropractors are not considered 'acceptable medical sources'").

The ALJ found that Dr. St. John's opinion was unsupported by medical evidence on the record as a whole. Even from a treating medical doctor, which Dr. St. John is not, a "conclusory statement – that is, a statement not supported by medical diagnoses based on objective evidence – will not support a finding of disability." *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). It is appropriate "to disregard statements of opinion by a treating physician that 'consist[s] of nothing more than vague, conclusory statements.'" *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (quoting *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996)).

The medical evidence of record contradicts Dr. St. John's opinion. For example, in January 2002, Dr. Corsolini's examination found plaintiff had normal posture, normal biceps strength, and normal reflexes at the patellar and Achilles locations. Palpation of the spine was nontender, straight leg raises were negative, and manual compression of the chest was nontender. Romberg test was normal and tandem gait performance was good. Range of motion testing was entirely normal and unrestricted at the shoulders, elbows, wrists, knees, hips, ankles, cervical spine, and lumbar spine. Plaintiff's upper and lower strength was 5/5, as was her grip strength. Dr. Corsolini determined plaintiff had no limitations in standing, walking, sitting, lifting, carrying, or handling objects. He also concluded: "[t]he

3

physical examination does not seem to be abnormal, and the medical evidence provided through Ms. Cooper does not indicate a significant physical abnormality."

Plaintiff contends the ALJ should not have assigned Dr. Corsolini's opinion more weight than the opinion of her chiropractor because Dr. Corsolini saw her only one time. However, the Eighth Circuit has upheld the ALJ's decision to credit a one-time consultant and discount even a treating medical doctor's opinion "where [the one-time] medical assessments are supported by better or more thorough medical evidence." *Anderson v. Barnhart*, 344 F.3d 809, 812-13 (8th Cir. 2003) (quoting *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000)). In this case, Dr. Corsolini's opinion is supported by better and more thorough medical evidence.

In addition, the other medical evidence contradicts Dr. St. John's opinion that plaintiff has extreme limitations from pain. Plaintiff underwent bilateral carpal tunnel release in February and July 1995. By late September 1995, plaintiff was working six hours a day at her regular job with instructions from her surgeon, Dr. Morris, to increase to eight hours by the middle of October 1995. On November 21, 1995, Dr. Morris opined plaintiff had made maximum medical recovery and required no further treatment for carpal tunnel. "Impairments that are controllable or amenable to treatment do not support a finding of total disability." *Pepper o/b/o Gardner v. Apfel*, 342 F.3d 853, 855 (8th Cir. 2003) (quoting *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999)).

There is also no evidence of a relapse of the carpal tunnel condition. In April 1997, a follow-up electrophysiologic examination by Dr. Goldring found no sensory deficit in plaintiff's hands or forearms. Plaintiff had full strength, and her reflexes were 2+ and symmetric at the biceps and triceps. Nerve

4

conduction studies detected no abnormalities. Dr. Goldring concluded: "[t]here was no evidence for a residual or recurrent distal entrapment neuropathy either at the wrist or at the elbows."

While plaintiff was involved in a motor vehicle accident in May 2000, subsequent x-rays of her chest, pelvis, cervical spine, and ribs were all normal. Plaintiff was not hospitalized after the accident, but was treated and release from the emergency room, diagnosed merely with a neck sprain and chest contusion [bruise]. Further bilateral rib and chest x-rays in September 2000 were entirely normal, and a CT scan of plaintiff's chest in January 2001 was also normal. In response to plaintiff's complaint of continued aches and pains in her chest in May 2001, a treating physician, Dr. Mayuga, noted all x-rays and a CT scan were normal, and commented: "[i]t is hard to tell where she is having pain."

When Dr. Bult examined plaintiff at the Pain Clinic in December 2002 for complaints of mid back and left chest pain, he determined all x-rays and a CT scan were unremarkable. Dr. Bult's physical examination found a moderate amount of tenderness at T7 and T8, but was otherwise unremarkable, and he described a subsequent MRI of plaintiff's thoracic spine as a "negative study."

The medical evidence of record does not support chiropractor St. John's opinion. The ALJ did not err in assigning Dr. St. John's opinion no weight.

Plaintiff next argues the ALJ improperly considered only the objective medical evidence in discrediting plaintiff's subjective complaints.

In evaluating plaintiff's subjective complaints, and ultimately determining her testimony was not credible, the ALJ properly considered the objective medical evidence, e.g., clinical findings, x-rays, CT and MRI scans, and other diagnostic test results, but also considered other factors, including medical opinion evidence and non-medical factors, in compliance with the Commissioner's regulations at 20

C.F.R. § 404.1529(c) (2004), Social Security Ruling (SSR) 96-7p, and the factors for evaluating subjective complaints set forth in *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 19840. "The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (citation omitted). In this case, the ALJ clearly acknowledged the *Polaski* framework in assessing plaintiff's credibility.

The ALJ also considered subjective factors, including plaintiff's failure to continue recommended treatment with medication at the Pain Clinic after June 2003. "A failure to follow a recommended course of treatment also weighs against a claimant's credibility." *Guilliams v. Barnhart*, 393 F.3d at 802 (8th Cir. 2005) (citation omitted). "[T]he ALJ concluded, and we agree, that if her pain was as severe as she alleges, [the plaintiff] would have sought regular medical treatment." *Edwards*, 314 F.3d at 967.

While plaintiff contends she could not afford to continue treatment at the Pain Clinic, it is for the ALJ to determine a claimant's real motivation for failing to follow recommended treatment or seek medical attention. *See Hutsell v. Sullivan*, 892 F.2d 747, 750 n.2 (8th Cir. 1989) (citing *Benskin v. Bowen*, 830 F.3d 878, 884 n.1 (8th Cir. 1987)). Furthermore, there is no evidence that plaintiff was denied medical care because of her financial condition. *See Osborne v. Barnhart*, 316 F.3d 809, 812 (8th Cir. 2003) (while claimant's mother cited "lack of insurance" as a reason for not pursuing mental health treatment for her daughter, there was "no evidence either Ms. Osborne or her mother attempted to obtain treatment, and were denied such treatment because of insufficient funds or insurance"); *Clark v. Shalala*, 28 F.3d 828, 831 n.4 (8th Cir. 1994) (although economic justifications for the lack of treatment can be relevant to a disability determination, the plaintiff offered no testimony or other

evidence that she had been denied further treatment or access to prescription pain medicine on account of financial constraints).

Likewise, the ALJ considered non-medical factors, including plaintiff's testimony concerning her daily activities. Plaintiff testified she lived in a double wide trailer with her husband and 16 year old daughter. She tried to do a little of everything with respect to housework. She did laundry and cooked once a day. She had a driver's license and drove once a week to the grocery store.

The ALJ also considered plaintiff's work history. More specifically, the ALJ considered that plaintiff recovered from carpal tunnel surgery in 1995 to the extent she was medically released to perform part-time, and eventually full-time, work within several months after the surgery. When a claimant has worked with an impairment, it cannot be considered disabling at present without a showing there has been a significant deterioration in that impairment. *See Orrick v. Sullivan*, 966 F.2d 368, 370 (8th Cir. 1992). As discussed *supra*, there is no evidence of a carpal tunnel relapse. In fact, there was an entirely normal electrophysiologic examination for carpal tunnel in April 1997.

In addition, the ALJ considered plaintiff's testimony that she continued working 20 hours a week at a nursing home laundry through at least June 2002, well past the May 2000 disability onset that she initially claimed. Plaintiff subsequently amended her alleged disability onset to June 2002.

Another factor the ALJ considered was that plaintiff did not require any assistive device, and in particular, she did not require braces, a cane, crutches, or a walker. *See Brown o/b/o Williams v. Barnhart*, 388 F.3d 1150, 1152-53 (8th Cir. 2004) (ALJ properly considered that the claimant "did not use an ambulatory assistive device"); *Fredrickson v. Barnhart*, 359 F.3d 972, 977 (8th Cir. 2004) (evidence that claimant could walk without an assistive device contradicted subjective complaints and

7

supported ALJ's finding that he could perform sedentary work). And, the ALJ considered plaintiff's testimony that she took over-the-counter Advil for pain. *See Masterson v. Barnhart*, 363 F.3d 731, 739 (8th Cir. 2004) (ALJ properly considered claimant did not take narcotic pain medication in finding her complaint of extreme pain not credible); *Rankin v. Apfel*, 195 F.3d 427, 430 (8th Cir. 1999) (citation omitted) (evidence that claimant primarily used over-the-counter pain relief remedies supported ALJ's credibility determination).

The ALJ evaluated plaintiff's credibility, and articulated the inconsistencies he relied on in discrediting her testimony. Deference to an ALJ's credibility analysis is appropriate where, as here, the ALJ explicitly discredits the claimant and gives good reason for doing so. *See Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001). "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards*, 314 F.3d at 966.

Finally, plaintiff argues the ALJ did not give proper consideration to the testimony of her lay witnesses. The record reflects the ALJ considered the testimony of plaintiff's husband, but found it was essentially a recitation of plaintiff's allegations, which the ALJ had found not credible. It was evident from the husband's testimony he was not with plaintiff during much of the day and he had a pecuniary interest in the outcome of the case. The ALJ assigned little weight to written testimony from other lay witnesses for similar reasons. Although the law requires consideration of lay testimony, it does not direct that the Commissioner must believe it. *See Rappoport v. Sullivan*, 942 F.2d 1320, 1323 (8th Cir. 1991). An ALJ, having properly discredited a claimant's complaints of disabling symptoms, is equally empowered to reject the cumulative testimony of the claimant's relatives and acquaintances. *See Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998) (citing *Onstronski v. Chater*, 94 F.3d 413,

8

419 (8th Cir. 1996)) (ALJ properly rejected testimony of claimant's parents, who were not qualified to give an opinion regarding the claimant's capacity to work, and whose testimony merely corroborated the claimant's testimony regarding subjective complaints). The Eighth Circuit has upheld an ALJ's discrediting of a claimant's witnesses. *See Lorenzen v. Chater*, 71 F.3d 316 (8th Cir. 1995).

In her final argument, plaintiff alleges the ALJ's determination plaintiff was capable of performing her past relevant work was flawed because it was not based on the testimony of a vocational expert. However, because plaintiff did not meet her burden of making a *prima facie* showing that she could not return to her past relevant work, the burden never shifted to the Commissioner, and thus, vocational expert testimony was not required. *See Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996); *Gaddis v. Chater*, 76 F.3d 893, 896 (8th Cir. 1996); *Barrett v. Shalala*, 38 F.3d 1019, 1024 (8th Cir. 1994). *See also Wingert v. Bowen*, 894 F.2d 296, 298 (8th Cir. 1990) (vocational expert testimony not needed when the claimant can perform his or her past relevant work).

While the ALJ did not utilize a hypothetical question, he did elicit vocational expert testimony to describe and categorize plaintiff's past jobs, including her work as a sewing machine operator, which the vocational expert testified was a light, semi-skilled job with an SVP (specific vocational preparation) level of 3. The ALJ subsequently compared the requirements of the sewing machine operator job with plaintiff's RFC for light work, *i.e.*, work that requires lifting 20 pounds occasionally and 10 pounds frequently, and properly determined that plaintiff's RFC permitted her to perform that past relevant work. "Where the claimant has the residual functional capacity to do either the specific work previously done or the same type of work as it is generally performed in the national economy,

9

the claimant is found not to be disabled." *Masterson*, 363 F.3d at 737 (quoting *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000)).

Once the ALJ determined plaintiff could return to her past relevant work, there was no need for additional evidence from a vocational expert.

WHEREFORE, for the reasons stated herein, the Commissioner's decision is affirmed.

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE
United States District Court

DATED: August 24, 2005